## COMPENSATION AGREEMENT

This Compensation Agreement (this "Agreement") is entered into as of April 28, 2020 (the "Effective Date"), by and between ELIXIR THERAPEUTICS, LLC, a Wyoming limited liability company located at 1515 SW Fifth Avenue, Suite 600, Portland, Oregon 97201 ("ELIXIR") and GLOBAL INNOVATIVE CONCEPTS, LLC, an Alabama limited liability company located at 4237 Old Leeds Lane, Birmingham, AL 35213 ("ASSOCIATE"). ELIXIR and ASSOCIATE may each be referred to as a "Party" and collectively as the "Parties." Capitalized terms used shall have the meanings ascribed to them in this Agreement.

## BACKGROUND

A.  The Parties each expect to provide services and contribute towards the execution of one or more successful purchase orders or purchase and sale agreements from ELIXIR for various medical equipment and supplies including but not limited to medical protection masks, non-medical masks, thermometers, medical gowns, medical caps, medical testing kits, medical equipment, non-medical and medical gloves, shoe protectors, hazmat suits and other products (the "Product"), managed and executed under a purchase order or purchase and sale agreement the consummation of which was materially assisted by ASSOCIATE and agreed to in writing by the Parties ("Sales Transaction").

B.  The Parties wish to have a written agreement concerning commissions related to the Sales Transaction, as well as other future transactions, based on the terms and conditions stated herein.

## AGREEMENT

In consideration of the mutual promises contained herein and other good and valuable consideration the sufficiency and receipt of which is hereby acknowledge, the Parties agree as follows:

1.  **APPOINTMENT.** From time to time ELIXIR may agree in writing for ASSOCIATE to assist in consummating a Sales Transaction. All such Sales Transactions will be subject to the terms stated herein unless expressly modified in writing.

2.  **COMPENSATION and COSTS.** It is anticipated that in consummating a Sales Transaction, that Product will be delivered to the designated buyer. Adjustments in quantity may occur due to damage, loss or adjustments in the number of Products increasing or decreasing due to changes requested by a buyer ("Adjustments"), which may adjust the total compensation due ASSOCIATE. Prior to the payment of any compensation to ASSOCIATE, ELIXIR shall deduct all costs of Product, and to the extent incurred, all costs of transportation and delivery of the Product, commissions to third parties that have been approved by ELIXIR and ASSOCIATE, cost of storing Product, insuring Product, costs of customary purchase order financing or reasonable financial costs associated with fulfilling a purchase order, which is the subject of a Sales Transaction, and any other ancillary costs related to performing and completing a Sales Transaction ("Costs"). Payment of compensation shall be made via wire transfer or as instructed by ASSOCIATE. Once the gross sales proceeds from a Sales Transaction are received by ELIXIR and after all Adjustments and Costs have been taken into account and settled, ELIXIR shall within two (2) business days distribute the compensation to ASSOCIATE. Unless otherwise agreed by the Parties in writing, the amount of ASSOCIATE'S compensation shall be equal to fifty percent (50%) of the gross sales proceeds received by ELIXIR from a buyer pursuant to a Sales Transaction, *less* all Costs and Adjustments. ASSOCIATE'S compensation shall be sent to the following ASSOCIATE'S bank account below for the Sales Transaction involving the following Product described:

| | |
|---|---|
| Bank Name: | Regions Bank |
| Account Name: | Global Innovative Concepts |
| Account Number: | 0215906035 |
| ABA / Routing Number: | 062000019 |

| | |
|---|---|
| Account Holder Address: | 4237 Old Leeds Lane, Birmingham, AL 35213 |
| Product Description: | 3PLY Disposable Masks / Nitrile Gloves / Hazmat Suits |
| Buyer: | State of Georgia |
| Purchase Order No: | 42200-GEM-0000050317 |

3. **CONFIDENTIAL INFORMATION.**

3.1  "Confidential Information" includes: (a) the Products; (b) any personally identifiable data or information regarding any Party and/or supplier; (c) any and all information disclosed by each Party to one another, in whatever format, that is either identified as or would reasonably be understood to be confidential and/or proprietary; (d) any notes, extracts, analyses or materials prepared by each Party which are copies of or derivative works of Confidential Information or from which Confidential Information can be inferred or otherwise understood; and (e) the terms and conditions of this Agreement. "Confidential Information" does not include information received from the other Party that the Party can clearly establish by written evidence: (i) is or becomes known to the Party from a third party without an obligation to maintain its confidentiality; (ii) is or becomes generally known to the public through no act or omission of the Party; or (iii) is independently developed by the Party without the use of Confidential Information.

3.2  **Party's Obligations.** The Parties will not use any Confidential Information for any purpose except as expressly authorized by this Agreement. Except as expressly provided in this Agreement, the Parties will not disclose Confidential Information to any third party and will protect and treat all Confidential Information with the same degree of care as it uses to protect its own confidential information of like importance, but in no event with less than reasonable care. Except as expressly provided in this Agreement, the Parties will not use, make or have made any copies of Confidential Information, in whole or in part, without the prior written authorization of the remaining Parties. In the event that a Party is required to disclose Confidential Information pursuant to law, the Party will notify the remaining Party of the required disclosure with sufficient time for any of the remaining Parties to seek relief, will cooperate with the Party in taking appropriate protective measures, and will make such disclosure in a fashion that maximizes protection of the Confidential Information from further disclosure.

4. **INDEMNIFICATION BY PARTIES.**

Each Party will indemnify, defend and hold harmless the remaining Parties from and against any and all claims, damages and expenses (including reasonable attorneys' fees and costs of litigation) by any third party resulting from any acts or omissions of the Party relating to its activities in connection with this Agreement, including the Party's breach of this Agreement, or the Party's misrepresentations relating to the Services, Products, or this Agreement, regardless of the form of action.

5.  **NON SOLICITATION/NON CIRCUMVENT.** The Parties to this agreement have established a certain inter relationship with the buyer in any transaction in which **ASSOCIATE** and **ELIXIR** have agreed in writing to payment of compensation. The Parties wish to respect these relationships and not attempt to circumvent these relationships in an effort to establish a direct relationship with any such buyer to the exclusion of the other Party Each Party therefore agrees, along with all signers below and on behalf of any entity owned, controlled by, controlling or under common control with or by the Party that he/she will not, directly or indirectly, as a principal, agent or employee, or as a stockholder, partner, member, manager, director or officer, or in any other capacity, do any of the following at any time for two years from date of execution of this agreement:

a.  Induce or attempt to induce any Party or related entity to breach or terminate any contractual relationship with another Party or a buyer in the transaction; or

Compensation Agreement

2

Exhibit 1
Page 2 of 4

b.     Establish a direct business relationship with any buyer originating from or through **ASSOCIATE** or its officers and members or its affiliates or with any seller originating from or through **ELIXIR** or its officers and members or its affiliates without first informing the remaining Parties and obtaining written permission and consent from the remaining Parties.

c.     Engage in any activity for the purpose of influencing or attempting to influence, any customers or clients of any other Party to conduct business with any business enterprise if doing so would diminish such customers' or clients' business with the other Party; or

d.     Divert or take away (or attempt to divert or take away), any of the present customers or clients of another Party; or

e.     Interfere with the contractual or business relationships of another Party; or

f.     Slander or disparage another Party or any of its Affiliates (or any of the directors, officers, employees or representatives of any of them), or undertake any activity that brings, or could reasonably be expected to bring, the Party or any of its Affiliates into public disgrace or disrepute or that has, or could reasonably be expected to have, a material adverse effect on the Party or any of its Affiliates, including their goodwill or their business opportunities.

g.     In a good faith effort to ensure cooperation and maintain peace and harmony among the Parties all Parties shall have an affirmative duty to keep the remaining Party informed of any attempted contact by an existing or potential buyer or seller subject to this agreement.

6.     **EQUITABLE RELIEF.** The Parties acknowledges that any breach or threatened breach of this Agreement involving an unauthorized use of Confidential Information will result in irreparable harm to the other Party for which damages would not be an adequate remedy, and therefore, in addition to its rights and remedies otherwise available at law, either Party, will be entitled to seek injunctive or other equitable relief. Additionally, any breach of this agreement by any party will subject the Party to be excluded from all other future business relationships and agreements entered into by the remaining Parties. Accordingly, the injured Party agrees that the injured Party shall, in addition to any other rights or remedies it may have, be entitled to obtain such equitable or injunctive relief as may be available from any court of competent jurisdiction.

7.     **RELATIONSHIP OF PARTIES.** Each Party is an Independent Contractor and not an employee or agent of the other Party. Specifically, and for the avoidance of doubt, **ASSOCIATE** is not authorized to make any changes to a purchase or sale agreement, or to make any commitments or representations to any buyer or other person concerning any issue.

8.     **SURVIVAL.** Termination of this Agreement will not relieve either Party from its obligations arising hereunder prior to termination. Rights and obligations which by their nature should survive will remain in effect after termination or expiration of this Agreement.

9.     **ASSIGNMENT.** Neither this Agreement nor any rights or obligations of any Party hereunder shall be assignable or transferable in whole or in part, by operation of law or otherwise, without the prior written consent of the other Party. Any attempted assignment, subcontract or other transfer of this Agreement or any of either Party's rights or obligations hereunder will be void ab initio and will be considered a material breach of this Agreement.

10.     **NOTICES.** Any notices or other communications required or permitted hereunder shall be in writing and personally delivered at the principal business addresses designated at the beginning of this Agreement, or mailed by registered or certified mail, return receipt requested, postage prepaid, at the address set forth above, or to such other address or addresses as may be hereafter furnished by one Party to the other Party in compliance with the terms hereof.

11. **FORCE MAJEURE.** Neither of the Parties shall be liable for failure or delay in performance of any of its obligations hereunder if such delay or failure to perform is caused by circumstances beyond its control. Parties shall be required to accept any delayed shipment, lack of service, or delivery made within a reasonable time.

12. **GOVERNING LAWS; ATTORNEYS' FEES.** This Agreement shall be governed by and construed and enforced in accordance with the laws of Oregon. The Parties agree that any legal action or proceeding with respect to this Agreement may be initiated only in the federal or state courts located in the Multnomah County, Oregon. By execution and delivery of this Agreement, the Parties submit to and accept with regard to any such action or preceding the exclusive jurisdiction of such courts. If any legal action or proceeding is initiated, the prevailing Party shall be entitled to all attorney fees, court costs, and expenses in addition to any other relief to which such prevailing Party may be entitled.

13. **ENTIRE AGREEMENT; WAIVER.** This Agreement constitutes the entire agreement and understanding of the Parties with respect to the subject matter hereof and supersedes and terminates all other prior commitments, arrangements or understandings, both oral and written, between the Parties with respect thereto. This Agreement may not be modified or amended except by an instrument in writing executed by the Parties. None of the provisions of this Agreement shall be deemed to have been waived by any act or acquiescence on the part of either Party, their associates or employees, but may be waived only by an instrument in writing signed by an officer of the waiving Party. No waiver of any provisions of this Agreement on one occasion shall constitute a waiver of any other provisions or of the same provisions on another occasion.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date.

ELIXIR:

ELIXIR THERAPEUTICS, LLC

By: _____

Martin L. Hudler, Manager / Director

ASSOCIATE:

GLOBAL INNOVATIVE CONCEPTS, LLC

By: _____

Name: Allen Kilgore

Title: Manager