**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Jonathan Stamm**, OSB #185861
Email:  jstamm@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ELIXIR THERAPEUTICS, LLC**, a Wyoming limited liability company,<br><br>Plaintiff, Counterclaim-Defendant,<br><br>vs.<br><br>**GLOBAL INNOVATIVE CONCEPTS, LLC**, an Alabama limited liability company,<br><br>Defendant, Counterclaim-Plaintiff. | Case No. 3:20-cv-2055-YY<br><br>**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

# TABLE OF CONTENTS

Page

LR 7-1 CERTIFICATION ................................................................................................. 1

MOTION ............................................................................................................................ 1

INTRODUCTION ............................................................................................................. 1

    I.      Statement of Material, Undisputed Facts ............................................................. 2

          A.      The parties and their introduction. ........................................................... 2

          B.      The parties enter into a contract governing the sale of PPE to the State of Georgia and beyond. ...................................................................... 3

          C.      The PO from the State of Georgia and the signed Compensation Agreement. ................................................................................................ 5

          D.      Final payment from the State of Georgia, Mr. Hudler's bad faith "revocation" of the parties' contract, and Elixir's breach. ......................... 7

          E.      Delay, obfuscation, and bad faith. ........................................................... 8

          F.      The accounting of expenses and revenue for the Georgia Transaction, and the correct amount of compensation owed to Global. ............................... 9

          G.      Summary of undisputed, material facts. .................................................. 10

ARGUMENT ................................................................................................................... 11

    I.      Legal Standard .................................................................................................. 11

          A.      Summary Judgment on Written Contract [existence of and breach] ........ 11

          B.      The agreement reached before April 28, 2020 is valid and enforceable, and Elixir breached that agreement by failing to pay Global its commission. 12

              1.      Under Oregon's choice-of-law analysis, Georgia law would apply, although under either Georgia or Oregon law, the agreement would be valid and enforceable. ........................................................... 12

              2.      Terms of the parties' agreement and Elixir's breach. ................... 15

               3.      Elixir's breach of the agreement. ................................................. 16

           C.      The Compensation Agreement signed by Mr. Hudler is valid and enforceable. .............................................................................................. 16

               1.      Terms of the Compensation Agreement. ..................................... 18

           D.      Elixir's contract damages are reasonably certain. .................................... 20

           E.      In the alternative to Count I, summary judgment on Counts IV and V are appropriate. .............................................................................................. 22

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

F.    Summary judgment on Count II, violation of the Alabama Sales Representative Statute—is appropriate...................................................... 23

CONCLUSION.................................................................................................................... 24

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................11

*Barnes v. Martin-Pierce*,
   838 S.E.2d 916 (Ga. Ct. App. 2020) ..................................................................14, 17

*Building Materials Wholesale, Inc. v. Triad Drywall, LLC*,
   287 Ga. App. 772, 653 S.E.2d 115 (2007) ..............................................................13

*CCE Federal Credit Union v. Chesser*,
   150 Ga. App. 328, 258 S.E.2d 2 (1979) ..................................................................16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................................11

*Classic Restorations, Inc. v. Bean*,
   272 S.E.2d 557 (Ga. Ct. App. 1980) ........................................................................17

*Clicks Billiards Inc. v. Sixshooters Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ..................................................................................11

*Del Lago Ventures, Inc. v. QuikTrip Corp.*,
   764 S.E.2d 595 (Ga. Ct. App. 2014) ........................................................................13

*Hansen v. Doan*,
   320 Ga. App. 609, 740 S.E.2d 338 (2013) .........................................................14, 17

*Hart v. Hart*,
   777 S.E.2d 431 (Ga. 2015) .......................................................................................13

*Herron v. Wells Fargo Fin., Inc.*,
   2006 WL 2422831 (D. Or. May 22, 2006) ...............................................................12

*Hill Aircraft & Leasing Corp. v. Planes, Inc.*,
   158 Ga. App. 151 (1981) ..........................................................................................13

*In re Hopson*,
   216 B.R. 297 (Bankr. N.D. Ga. 1997) .................................................................14, 17

*Jimenez v. Gilbane Bldg. Co.*,
   303 Ga. App. 125, 693 S.E.2d 126 (2010) ...............................................................13

DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

*Mount Hood Cmty. Coll. ex rel. K & H Drywall, Inc. v. Fed. Ins. Co.*,
199 Or. App. 146 (2005)................................................................................22

*Kashmir Corp. v. Patterson*,
43 Or. App. 45 (1979)..................................................................................22

*Klaxon Co. v. Stentor Co.*,
313 US 487 (1941).......................................................................................12

*Marett v. Brice Bldg. Co., Inc.*,
603 S.E.2d 40 (2004)...................................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).....................................................................................11

*Reebaa Const. Company, Inc. v. Chang Sop Chong*,
283 Ga. 222 (2008) .....................................................................................15

*Robinowitz v. Pozzi*,
127 Or. App. 464 (1994)..............................................................................22

*State v. U. S. Oil Co.*,
389 S.E.2d 498 (Ga. Ct. App. 1989)...........................................................17

*Syms v. State*,
331 Ga. App. 225, 770 S.E.2d 305 (2015)..................................................15

*Touche Ross & Co. v. DASD Corp.*,
292 S.E.2d 84 (1982)..............................................................................15, 16

*Uptown Heights Associates v. Seafirst Corp.*,
320 Or. 638 (1995).......................................................................................20

*Weathers v. Dieniahmar Music, LLC*,
788 S.E.2d 852 (Ga. Ct. App. 2016) ...........................................................13

**Statutes**

Alabama Code, Title 8, section 24-1, *et seq.* .......................................................23, 24

O.C.G.A. 13-5-30 (2010)......................................................................................18

ORS 15.380(2)(b) ..................................................................................................12

ORS 41.580............................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 56..............................................................................................1, 11

DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

https://www.elixirtherapeutics.com/about/ (last accessed June 16, 2022) .......................................3

https://www.elixirtherapeutics.com/shop/ (last accessed June 16, 2022).........................................3

LR 7-1 ...............................................................................................................................................1

DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

## LR 7-1 CERTIFICATION

In compliance with Local Rule 7-1, counsel for Defendant/Counter-Plaintiff Global Innovative Concepts, LLC ("Global") certifies that he conferred in good faith with counsel for Plaintiff/Counter-Defendant Elixir Therapeutics, LLC ("Elixir") regarding the subject of this motion, and the parties were unable to resolve the dispute and Elixir opposes this motion.

## MOTION

Global moves pursuant to Fed. R. Civ. P. 56 for summary judgment on the following:

1.      Summary judgment on Count I of its Counterclaim (breach of contract), pursuant to the parties' agreement formed up to April 28, 2020.

2.      Summary judgment on Count I of its Counterclaim (breach of contract), pursuant to the written Compensation Agreement.

3.      Summary judgment on Counts IV and V of its Counterclaim (unjust enrichment and *quantum meruit*, respectively), in the alternative to Count I.

4.      Summary judgment on Count II of its Counterclaim (violation of the Alabama Sales Representative Statute).

This Motion is supported by the points and authorities listed below, the pleadings and records contained in the Court's file, as well as the Declaration of Jonathan Stamm ("Stamm Decl.") and the Declaration of Allen Kilgore ("Kilgore Decl.")—both filed contemporaneously with the instant Motion.

## INTRODUCTION

What will appear to be the concoction of a diabolical first-year contracts professor, this case is relatively simple: Global is owed a commission for its efforts in soliciting a sales order from the State of Georgia that Elixir then successfully fulfilled (and for which it received handsome payment). When Elixir received full and final payment from the State of Georgia over two years ago, it disavowed its contractual obligations and refused to pay Global for its efforts. Instead, Elixir filed an action in Multnomah County Circuit Court seeking a declaration that no

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

written contract existed between the parties, asking the Court to determine the respective rights and obligations of each party.

This case is about Elixir refusing to honor its contractual obligations. While the agreement was formed through a series of communications and full performance by Global, at all material times it was valid agreement existed between the parties whereby Elixir and Global would split gross profits on any sale on a 50/50 basis. This arrangement was later reflected in the written document that is attached as Exhibit 1 to Global's Counterclaim [ECF 1]. Elixir invited Global to perform. Global did so, yet ultimately to its detriment. Over two years have passed since the day Elixir receive final payment from the State of Georgia, and Elixir still retains over $1.5 million of commissions that are rightfully due and owing to Global. For these reasons, and for the reasons more fully set forth below, summary judgment on Counts I, II, IV, and V is proper.

## I.    STATEMENT OF MATERIAL, UNDISPUTED FACTS

### A.    The parties and their introduction.

At the onset of the COVID-19 Pandemic, there was an explosion of demand for various medical supplies, such as personal protective equipment ("PPE"). *See* Kilgore Decl. at ¶ 11. PPE includes things like masks, gowns, and gloves. Much of this demand came from local, state, and federal emergency management offices and health departments. *Id.* Defendant/Counter-Plaintiff, Global Innovative Concepts, LLC ("Global"), based in Alabama, was an early actor in the PPE space at that time, having already been involved in PPE procurement for various state agencies as of April 2020. Kilgore Decl., ¶ 6. Global is headed by Mr. Allen Kilgore. Kilgore Decl., ¶ 1.

At the end of March of 2020, Mr. Kilgore was introduced through a mutual contact in the shipping and logistics space, James DeArruda, to Plaintiff/Counter-Defendant, Elixir Therapeutics, LLC ("Elixir"). Kilgore Decl., ¶ 4. Specifically, Mr. DeArruda introduced Mr. Kilgore to Mr. Shahriar Shahid. *Id.* At all material times, Mr. Shahid served as Elixir's "Director." Kilgore Decl., ¶ 8; *see also,* June 2, 2022 Deposition of Shahriar Shahid ("Shahid Depo.") at 41:20-23, attached as Ex. "A" to the Stamm Decl.; February 8, 2022 30(b)(6)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

Deposition of Elixir ("Elixir Depo.") at 30:1-14, attached as Ex. "B" to the Stamm Decl. At all material times described below, Mr. Kilgore understood Mr. Shahid to have authority to negotiate on behalf of Elixir. Kilgore Decl., ¶ 8.

Elixir is a Wyoming corporation with its principal place of business in Portland, Oregon. *See* Elixir's Answer to Counterclaim, ¶ 3 [ECF15]. The Elixir website lists only two individuals as part of its team: Shahriar Shahid and Martin Hudler.[1] The Elixir website also lists various PPE for sale.[2] At the time of Mr. Shahid's introduction to Mr. Kilgore, neither Mr. Shahid nor Elixir had ever been involved in a transaction involving PPE, nor a transaction with a state or federal agency. Shahid Depo. at 20:21-24; 35:4-9; 35:18-24 (acknowledging same). Of the sales that Elixir had done, it had used consultants, brokers, and other "middle-men" to assist in sale generation. Shahid Depo. at 36:20-25 (stating same); *see also*, Elixir Depo. at 24:15-21 (stating same).

## B.    The parties enter into a contract governing the sale of PPE to the State of Georgia and beyond.

Upon their introduction, Mr. Kilgore and Mr. Shahid immediately began discussing an arrangement wherein Global would solicit and generate purchase orders from state agencies that Elixir would fulfill, at which point the two sides would split profits on a 50/50 basis. Kilgore Decl. ¶ 10; *see also,* Shahid Depo. at 41:7-19 (Mr. Shahid acknowledging Elixir's interest in other actors bringing sales opportunities to Elixir and this being something Global could provide to Elixir). These discussions are reflected in a series of emails dated March 30 and April 4, 2020, copies of which are attached as Exhibits "A" and "B" to the Kilgore Decl.

In these emails, Mr. Shahid provides quotes for Mr. Kilgore as to the amount and price of product that could be sold by Elixir, commissions that would be owed to third-parties for shipping and other services, and the remaining profit split between Elixir and Global. Mr. Kilgore understood these emails to constitute the material terms governing the sale of particular PPE that Global would generate, including the eventual sale to the State of Georgia (hereafter,

---

[1] https://www.elixirtherapeutics.com/about/ (last accessed June 16, 2022)
[2] https://www.elixirtherapeutics.com/shop/ (last accessed June 16, 2022)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

the "Georgia Transaction"). Kilgore Decl., ¶¶ 17-19; *see also,* Shahid Depo. at 60:8-12 (acknowledging the profit split discussed in these emails). The parties never discussed whether these conversations would be need to be reduced to a formal, written, and signed document before becoming binding and enforceable. Kilgore Decl., ¶ 19. Indeed, Mr. Kilgore assented to these terms to Mr. Shahid as the basis for the parties' relationship moving forward. *Id.* In reliance on these emails, Global began its efforts to solicit a purchase order from the State of Georgia Emergency Management Agency. Kilgore Decl., ¶ 16, ¶ 26

What is clear in these emails is an intent to split profit on a 50/50 basis between the two parties, after commissions owed to the individuals identified (*e.g.,* Phil Gambel and Jim DeArruda). *See* Shahid Depo. at 46:12-15 (acknowledging that these emails concern the profit split in relation to contemplated sales that Global would bring to Elixir), 47:11-48:6 (affirming the terms spelled out in these emails), 59:17-60:7 (acknowledging that Mr. Shahid is offering a profit split on products that Elixir would sell); *see also,* Elixir Depo. at 29:4-14; 32:3-6 (acknowledging that the March 30, 2022 email to be in reference to the Georgia Transaction specifically).

In reliance on these terms, Global moved forward with generating a purchase order from the State of Georgia. Kilgore Decl., ¶ 19, ¶¶ 26-27; ¶ 31; *see also,* Elixir Depo. at 39:18-25 (acknowledging that, as of April 8, 2020, Global was working to secure a purchase order from the State of Georgia). At no point in sending these emails did Mr. Shahid disclose that he did not have the authority to bind Elixir, that he would need approval from Mr. Hudler first, and that these emails were not to be taken as a forming the terms of an express contract between the parties. Kilgore Decl., ¶ 19, ¶ 22.

Furthermore, at no point in these communications did Mr. Shahid indicate that Elixir would be financing the procurement of product or would be drawing upon third-party sources of investment to procure product, such that these sources of finance or investment would need to be paid *before* any profit allocation between Global and Elixir. Kilgore Decl., ¶ 18, ¶¶ 24-25;

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

Shahid Depo. at 48:7-22 (acknowledging same); Elixir Depo. at 66:10-15, 67:22-24 (acknowledging same).

The parties thereafter discussed reducing their agreement to a more formal, written document. Kilgore Decl., ¶ 21, ¶ 32. Originally, Mr. Shahid proposed having a formal, written agreement for each product type sold on any given deal. Kilgore Decl., ¶ 21. On April 5, 2020, Mr. Shahid sent to Global a draft "Commission Disbursement Agreement," governing the sale of masks. *See* Ex. "C" to Kilgore Decl. The profit allocation per mask sold in this document is consistent with what the parties had previously agreed to—forty cents per mask to Global as commission. *Id.* This document also reiterated the sequencing of payment: Elixir would pay Global its commission within two business days after receipt of payment for a sale. *Id.*

### C.    The PO from the State of Georgia and the signed Compensation Agreement.

On April 10, 2020, after the intense efforts by Global, the State of Georgia issued a purchase order ("PO") for masks, gloves, and hazmat suits to be fulfilled by Elixir. *See* Ex. H to Kilgore Decl. The total purchase price reflected on the PO is over $7 million. Critically, both Mr. Shahid and Elixir (on behalf of Elixir), have admitted that this would not have happened without Global's efforts, and that Global should be compensated for these efforts. *See generally,* Shahid Depo. at 64:11-18 (acknowledging same), 130:12-13 (same); 131:20-19 (same); Elixir Depo. at 40:1-14 (admitting same).

Eventually, the parties pivoted from executing distinct written agreements per product type, and instead decided it was better to reduce the previously-agreed upon terms to a master, umbrella agreement, whereby each subsequent deal would be reflected in addenda to such an agreement. Kilgore Decl., ¶ 32, Ex. I thereto. This is reflected in correspondence dated April 18, 2020, wherein Mr. Shahid asks Mr. Kilgore for Global's banking information to remit payment. *Id. See also*, Shahid Depo. at 79:6-22 (acknowledging that this email is specifically in reference to the Georgia Transaction).

On April 24, 2020, the masks had been delivered and the State of Georgia wired to Elixir $2.25 million as payment for delivery of the masks. On that date, Mr. Kilgore sent to Mr. Shahid

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

a redlined document reflecting the parties' earlier discussions about creating a master, "umbrella" agreement to govern all deals. Kilgore Decl., ¶ 35, and Ex. C thereto. In that same email, Mr. Kilgore asks for Elixir to remit payment to Global, given that the State of Georgia had made a payment. *Id.*

Meanwhile, Mr. Kilgore had only recently been introduced to Martin Hudler. At first, Mr. Kilgore believed Mr. Hudler's role to be on the accounting side of Elixir's business. Kilgore Decl., ¶ 28. In none of the emails described above was Mr. Hudler copied, let alone introduced to Mr. Kilgore as the managing director of Elixir. *Id.* Not once was it (1) communicated to Mr. Kilgore that Mr. Hudler would need to have final approval over any offer or (2) Mr. Shahid did not have authority to bind Elixir. Kilgore Decl., ¶ 8, ¶ 28; *see also,* Shahid Depo. at 81:8-82:1 (admitting that he never had any conversations with Mr. Hudler about the exchange of these draft agreements); Elixir Depo. at 59:9-25 (Mr. Hudler admitting that he had no awareness of how Mr. Shahid and Mr. Kilgore were structuring the dealings between them). For example, in an email dated April 8, 2020, Mr. Kilgore confirmed for Mr. Hudler the 50/50 profit allocation between Global and Elixir, as previously agreed to by Mr. Shahid. Kilgore Decl., ¶ 29, Ex. F thereto.

On April 28, 2020, Mr. Hudler sent to Global a written document titled "Compensation Agreement," bearing his signature. Kilgore Decl., ¶ 37, Ex. J thereto. This document further reflects the agreement already struck between the parties: a 50/50 profit allocation after payment of commissions to third parties previously disclosed. *Id.* The Compensation Agreement also introduces the concept of "reasonable financial costs" for the fulfillment of any product sold. *Id.* Prior to May 11, 2020, Mr. Hudler never indicated that this Compensation Agreement required Global's counter-signature to become effective. Kilgore Decl., ¶ 38; *see also,* Elixir Depo. at 77:18-78:4 (regarding Mr. Hudler's lack of recollection on this point). Mr. Kilgore interpreted this agreement to be effective against Elixir and, in reliance on this agreement, proceeded with working to secure the procurement of product and payment from the State of Georgia. Kilgore Decl., ¶ 39. Nevertheless, Mr. Kilgore did, in fact, sign the Compensation Agreement on the

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

same day that Mr. Hudler presented it to him. *Id. see also,* Ex. K thereto (Compensation Agreement bearing Mr. Kilgore's signature).

Furthermore, at no point prior to and leading up to April 28, 2020, were any "financing" costs revealed to—let alone approved by—Global. *See generally,* Kilgore Decl., ¶ [x]; Elixir Depo. at 66:5-15; 76:23-77:15. Elixir had never once indicated that "financing" costs would need to be incurred to procure product. Kilgore Decl., ¶ 25, ¶ 41. Indeed, the only thing remotely relating to a "finance" cost that had been discussed and agreed to by the parties was the charge of an additional nickel per mask that had been requested by the supplier of the masks, an entity named Cavalini, Inc., before the masks could leave that warehouse. Kilgore Decl., ¶ 33.

For his part, Mr. Shahid stated that he was unaware of any conversations between the parties at this time where commissions to third parties other than Phil Gamble and James DeArruda were disclosed. Shahid Depo. at 85:17-21.

### D. Final payment from the State of Georgia, Mr. Hudler's bad faith "revocation" of the parties' contract, and Elixir's breach.

On May 1, 2020, Elixir delivered the remaining product pursuant to the PO: hazmat suits. Kilgore Decl., ¶ 45. On May 11, 2020, the State of Georgia paid Elixir the remaining balance due: $3,213,200.00. *See* Ex. "C" to Stamm Decl. (May 2020 bank statement detailing this inbound payment). As of this moment, the Georgia Transaction was complete. Global had rendered services in reliance on an enforceable agreement between it and Elixir, and nothing further was to be done except for Elixir to pay Global it's 50% profit allocation after calculating the deductions for third-party commissions (Phil Gamble and James DeArruda). Kilgore Decl., ¶ 47. Stunningly, on that very same day, Mr. Hudler notified Mr. Kilgore that the previously-signed Compensation Agreement had been revoked and unenforceable due to the lack of a counter-signature by Global. Kilgore Decl., ¶ 48, Ex. M thereto. However, at no point prior to May 11, 2020, did Mr. Hudler condition the validity of the Compensation Agreement upon Global's counter-signature. Kilgore Decl., ¶ 48; *see also,* Elixir Depo. at 77:18-78:24 (where Mr. Hudler could not recall whether he ever indicated to Mr. Kilgore that the Compensation

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

Agreement required a countersignature). Indeed, Mr. Kilgore interpreted the Compensation

Agreement as binding, reflecting the agreement already struck between the two sides, and

reflecting the performance that had already occurred vis-à-vis the Georgia Transaction. Kilgore

Decl., ¶ ¶ 37-39.

Nevertheless, Elixir has admitted that Global was to be paid upon the completion of a

successful transaction with the State of Georgia. Elixir Depo. at 57:11-16, 65:13-17 (stating that

payment would be made after Elixir was paid from the State of Georgia).

E.    **Delay, obfuscation, and bad faith.**

From May 11, 2020, onwards began a long and complex story of obfuscation, delay, and

bad faith by Elixir in an effort to avoid paying Global its 50% profit allocation from the Georgia

Transaction. *See generally,* Kilgore Decl., ¶ ¶ 48-70. This story can also be summarized simply

as Elixir's breach of the oral and written agreements.

In addition to reneging on its earlier obligation, Elixir claimed that before any payment

could be made to Global, a significant payment north of $1million would first need to be paid to

mysterious "capital" sources Elixir had incurred in order to procure the product. Kilgore Decl.,

¶ 50. Over the next several months, Global made repeated demand for Elixir to remit payment.

Kilgore Decl., ¶¶ 51-70. Mr. Hudler's demands grew increasingly egregious before agreeing to

make any payment to Global, such as forcing Elixir to execute a "Settlement Agreement" for a

drastically reduced commission, which included a punitive damages provision and personal

indemnifications executed by both Mr. Kilgore and even his wife. Kilgore Decl., ¶ 55. Short of

initiating litigation, Mr. Kilgore felt powerless at this point. Kilgore Decl., ¶ 53. Nevertheless,

Mr. Hudler would acknowledge that GIC was owed for its services vis-à-vis the Georgia

Transaction. Kilgore Decl., ¶ 54, Ex. P thereto.

Mr. Hudler grew increasingly agitated with Mr. Kilgore's demands for payment, claiming

that his "capital" sources were demanding that Global accept a lower and lower amount of

compensation from the Georgia Transaction. Kilgore Decl., ¶ 61. Of course, it has since been

revealed in the course of discovery in this matter that these so-called "capital" sources were, in

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

fact, Mr. Hudler all along, along with (allegedly) his ex-father-in-law, who is now deceased. *See* Elixir's Amended Responses to Global's Interrogatories 17-19, attached as Ex. "D" to the Stamm Decl.

      **F.**      **The accounting of expenses and revenue for the Georgia Transaction, and the correct amount of compensation owed to Global.**

Eventually, Elixir produced a document purporting to reflect all of the revenue and expenses associated with the Georgia Transaction. *See* Ex. "E" to the Stamm Decl. This document was also produced in response to an Interrogatory requesting an accounting of costs and adjustments for the Georgia Transaction. In doing so, Elixir claimed that this document was a true and accurate presentation of all revenue and expenses associated with the Georgia Transaction. In this document, Elixir acknowledges compensation of $630,650 owed to Global (*i.e.,* "Kilgore Group"). What would now appear to make this case open and shut is, unfortunately, littered with errors. As but one example, Elixir states that amount it paid to the supplier of the 200,000 hazmat suits was $1,756,814.00. *Id.* **This is incorrect**. As reflected in Elixir's own bank activity, the amount it paid to this supplier—Red Rock Sourcing, LLC—was $1,497,570. *See* April 2020 Elixir Bank Statement, attached as Ex. "F" to the Stamm Decl. Mr. Hudler acknowledged that the price paid to the hazmat suit supplier, a Nevada entity named Red Rock Sourcing, LLC, was indeed $1,497,500. Elixir Depo. at 164:1-9. This is a difference of $259,244 that should have been re-allocated as profit between Global and Elixir. Building this amount back in to the allocations in this document nets Global—at a minimum—**$760,262.00**.

Remaining line items on this document were never disclosed to Global prior to entering in to its agreement with Elixir, such as "Capital Stack Fee" and "Capital Stack Participation." Together, these two items account for $1,646,593.00 that Elixir deducted from gross profit that would otherwise be allocated to Elixir and Global. As stated previously, neither a "Capital Stack Fee" nor a "Capital Stack Participation" fee were ever disclosed to Global leading up to and through the Georgia Transaction. Per Mr. Hudler's later testimony, his arrangement with his "capital" sources called for them to receive 50% of gross profit <u>first</u>, and the remaining amount

    DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

of profit would then be split 50/50 between Elixir and Global. In other words, Global was only to receive 25% of gross profit all along. Elixir Depo. at 97:25-100:15 (admitting that Global is owed compensation), 100:21-22 (admitting this alternative structure of payment to Global), 102:8-20 (unable to recall what Elixir's 25% share should be).

However, as admitted by Mr. Hudler, Mr. Shahid, and Mr. Kilgore—none of this had been disclosed to Global at any point until well after the Georgia Transaction had concluded. Kilgore Decl., ¶ 43; *see also* Elixir Depo. at 66:6-9, 76:23-77:15 (acknowledging same).

Therefore, building the $1,646,593.00 "Capital" "fees" back in to Elixir's own calculation, on top of the $259,244 difference in the cost of hazmat suits described above, Global is entitled to **$1,583,558.50** as compensation for the Georgia Transaction.

### G. Summary of undisputed, material facts.

What is undisputed is the following: Shahriar Shahid, acting as Director for Elixir, entered into an agreement with Global whereby Global would solicit purchase orders for PPE that Elixir would then fill. The parties executed an enforceable contract over email regarding procurement of PPE generally, and in particular vis-à-vis the state of Georgia. The material terms of that agreement were that, after commissions to a few individuals, the parties would split profit on any sale 50/50, and payment to Global was to occur within two business days after Elixir received any payment. In reliance on this, Global set out to generate a PO from the State of Georgia. The one adjustment to this deal was an additional nickel per mask in order for the supplier of the masks to release them from its warehouse. The parties worked to reduce this agreement to a formal writing, exchanging drafts of the same, while Global continued to work towards securing the PO. The PO was signed on April 10, 2020, and Elixir began delivering product. On April 28, 2020, after the first series of payments had come to Elixir from the State of Georgia, Martin Hudler sent to Global a signed Compensation Agreement. At no point up to or during that time did Elixir condition the enforceability of this agreement on Global's counter-signature. At no point up to this time had it been disclosed to Global that Elixir would be incurring significant "capital" finance charges that would ultimately account for a 50% reduction

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

in net profits between Elixir and Global. On the same day the State of Georgia sent the final payment to Elixir (totalling over $6 million in revenue), Elixir reneged on its earlier agreement(s), claiming that the Compensation Agreement was unenforceable. Elixir has since acknowledged—repeatedly—that the Georgia Transaction would never have occurred without Global's work, Global is entitled to compensation, and Global has never been paid. Finally, per the formula previously agreed to by the parties, and reflecting the true cost of goods sold, the amount owed to Global is **$1,583,558.50.**

ARGUMENT

## I.    LEGAL STANDARD

A party is entitled to summary judgment on any claim or defense if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor, *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001), the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to survive summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

### A.    Summary Judgment on Written Contract [existence of and breach]

There is no dispute that the parties entered into a valid and enforceable agreement whereby, in exchange for Global's efforts in generating the PO from the State of Georgia, Elixir would pay to Global 50% of gross profit from any sale, after deductions made for commissions to other third-parties. There is no dispute that Global fully performed. There is no dispute that Elixir received over $6 million from the State of Georgia. There is no dispute that Elixir has breached that agreement by failing to pay Global. Whether through the oral and written

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

communications between the parties through April 28, 2020, or through the executed

Compensation Agreement dated April 28, 2020, the Court need only decide which version of the

agreement that governs.

> **B.     The agreement reached before April 28, 2020 is valid and enforceable, and Elixir breached that agreement by failing to pay Global its commission.**

> > **1.     Under Oregon's choice-of-law analysis, Georgia law would apply, although under either Georgia or Oregon law, the agreement would be valid and enforceable.**

As described more fully above, from March 30, 2020, through April of 2020, the parties

had exchanged several emails and conversed regarding Global's services in generating PPE sales

for Elixir. It is undisputed that these communications, and Global's performance pursuant to

these communications, constitute a valid and enforceable agreement. As a threshold matter, the

Court may first need to determine which State's law governs the formation and interpretation of

this agreement, given that in none of these communications did the parties stipulate to a

particular State's substantive law. Given that the Court sits in diversity jurisdiction, the Court is

to look at the forum state's choice of law provisions to guide its analysis in applying the

appropriate substantive contract law. *Klaxon Co. v. Stentor Co.,* 313 US 487, 496 (1941). Here

we have a Wyoming entity with its principal place of business in Oregon and an Alabama entity

contracting for services rendered nationally, but more specifically within the State of Georgia.

ORS 15.380(2)(b), Oregon's choice-of-law provision regarding contracts, states that "[c]ontracts

for personal services are governed by the law of the state where the services are to be primarily

rendered pursuant to the contract." *See Herron v. Wells Fargo Fin., Inc.,* 2006 WL 2422831 (D.

Or. May 22, 2006) (applying same approach).

It is undisputed that (1) the parties contemplated an arrangement whereby Global was to

provide a service; and (2) Global's services were to be rendered nationally, but more specifically

the State of Georgia. Global submits that Oregon contract law should apply to this analysis,

given that Elixir is primarily an Oregon corporation, Elixir sued in Oregon first, and each

iteration of a written agreement (including the executed Compensation Agreement) stipulate to

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

Oregon law. However, to the extent that the Court finds that Georgia law would apply, the legal analysis would yield the same result: the parties entered into a valid and enforceable agreement. An examination of substantive Georgia contract law reveals that both Oregon and Georgia subscribe to long-standing, black letter principles of contract law (*i.e.,* the Restatement).

To state a claim for breach of contract under Georgia Law, a plaintiff's complaint must generally allege a factual framework showing parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate. *See Weathers v. Dieniahmar Music, LLC*, 788 S.E.2d 852, 858 (Ga. Ct. App. 2016). Each of these elements are met here.

The requisites of an explicit contract are a meeting of the minds of the parties, mutuality, and the clear expression of the terms of the agreement. *Jimenez v. Gilbane Bldg. Co.,* 303 Ga. App. 125, 693 S.E.2d 126, 129 (2010) (Stating same). In order for a contract to be valid, the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. *Id.* Partial performance of a contract supplies mutuality of obligation and renders the contract enforceable. *See Hill Aircraft & Leasing Corp. v. Planes, Inc.*, 158 Ga. App. 151, 152–53 (1981) (partial performance of agreement to sell aircraft, by buyer's paying seller deposit, supplied mutuality of obligation and rendered agreement to buy enforceable although agreement did not contain explicit promise to buy.). Moreover, assent to a contract may be given without signatures. *See generally, Del Lago Ventures, Inc. v. QuikTrip Corp.,* 764 S.E.2d 595, 600 (Ga. Ct. App. 2014); *Building Materials Wholesale, Inc. v. Triad Drywall, LLC*, 287 Ga. App. 772, 653 S.E.2d 115 (2007) (same)). As with Oregon, Georgia follows the "objective" theory of manifested assent to a contract. *Hart v. Hart*, 777 S.E.2d 431, 433 (Ga. 2015) (citations omitted). In making that determination, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence. *Id.*

Additionally, the parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

under the contract or the acceptance by one of the performance by the other. *Marett v. Brice Bldg. Co., Inc.,* 603 S.E.2d 40, 43 (2004). Thus, performing under a contract constitutes acceptance of an offer. *Hansen v. Doan,* 320 Ga. App. 609, 740 S.E.2d 338 (2013) (an offer may be accepted either by a promise to do the thing contemplated therein or by the actual doing of the thing); *Barnes v. Martin-Pierce*, 838 S.E.2d 916 (Ga. Ct. App. 2020) (same). The offeror's power to revoke the offer to enter into a contract ceases, however, at the instant that an acceptance by the offeree becomes effective. *In re Hopson*, 216 B.R. 297, 301-02 (Bankr. N.D. Ga. 1997).

Finally, the parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract or the acceptance by one of the performance by the other. *See Marett,* 603 S.E.2d at 43. Thus, performing under a contract constitutes acceptance of an offer.

Here, the email exchanges and contemporaneous communications between Mr. Kilgore and Mr. Shahid, and subsequent performance by Global, constitute a valid and enforceable contract. The emails dated March 30 (Ex. A to Kilgore Decl.) and April 4 (composite Ex. B to the Kilgore Decl.), along with the emails dated April 9 (Ex. G to Kilgore Decl., indicating the 50/50 profit split to Mr. Hudler), subsequent communications exchanging drafts of a Commission Disbursement Agreement between Mr. Shahid and Mr. Kilgore (Ex. C and I to Kilgore Decl.), clearly establish a mutual intent to be bound and mutual assent to the terms proposed. Global manifested its assent to these terms by acknowledging the same to Mr. Shahid and Mr. Hudler, and proceeding <u>to perform</u> in securing the PO from the State of Georgia. Kilgore Decl., ¶ 16, ¶ 19, ¶ 26. At no point did Elixir communicate that these emails were not intended to create an offer or form the basis for a binding agreement. Kilgore Decl., ¶ 19. At no point did Elixir communicate that the terms were indefinite or would need to be reduced to a formal, counter-signed document before becoming binding. *Id.* These communications reflected what commissions would be available to Global in particular for any sale, particularly to the State of Georgia. Kilgore Decl., ¶ 17; Shahid Depo. at 60:8-12. Elixir invited Global's

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

performance in offering these terms, and it became bound once Global did perform in response. In sum, the exchange of emails, communications (and lack thereof), and performance by Global in reliance on these communications, created a valid and enforceable agreement between Global and Elixir. Under any objective measure, it is clear that through these words and actions, both parties assented to an agreement and intended to be bound.

### 2.       Terms of the parties' agreement and Elixir's breach.

As seen above, this agreement was one for personal services, wherein Global was to be paid a commission for those services. The essential terms of this agreement are as follows: Global would solicit and generate purchase orders from state agencies for the procurement of PPE that Elixir would then fill. Elixir had particular product types that it could procure. Upon the successful sale of PPE by Elixir, Elixir and Global would split the profit margins between the cost of goods sold and the sale price 50/50, after allocations made for commissions to third-parties (Phil Gambel and James DeArruda). While other terms may have been left open for future negotiation, these were the basic and essential terms that govern this agreement. *See Syms v. State*, 331 Ga. App. 225, 770 S.E.2d 305 (2015) (the absence of agreement on nonessential terms does not render the agreement unenforceable).

A contract that may originally have been indefinite may later acquire more precision and become enforceable because of the subsequent words or actions of the parties. *Reebaa Const. Company, Inc. v. Chang Sop Chong*, 283 Ga. 222, 224 (2008) (citations omitted). For example, here, it was later discussed and agreed to by the parties that the supplier of the 3ply masks, Cavalini Inc., would receive an extra nickel per mask before the supplier would agree to release the masks from the warehouse. Kilgore Decl., ¶ 33.

The law does not favor destroying contracts on the basis of uncertainty if it is possible in the light of the circumstances under which the contract was made to determine the reasonable intention of the parties. *Reebaa Const. Company, Inc*., 283 Ga. at 224. In *Touche Ross & Co. v. DASD Corp.*,  292 S.E.2d 84 (1982), for example, a Georgia court held that "a contract is not void because its performance is, as to particular details, left subject to the subsequent agreement

Page 15     DEFENDANT'S MOTION FOR PARTIAL SUMMARY
           JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

of the parties." In *Touche Ross,* the contract's broad language as to the scope of work to be
accomplished by the defendant was not found too indefinite or vague, because the parties
"entered into performance of the contract without raising any question as to its legal significance,
and continued for a period of approximately five months." *Id*. So too here, there was never any
doubt raised between the parties as the material terms of the agreement before and during Global
rendered performance and the State of Georgia executed the PO. Moreover, the law does not
favor destroying contracts on the basis of uncertainty, and a contract that may originally have
been indefinite may later acquire more precision and become enforceable because of the
subsequent words or actions of the parties.

In sum, it is undisputed that the parties contemplated a 50/50 profit split on the profit
margins for each product type sold, after allocations accounting for deductions to third-parties
that had been disclosed previously (Phil Gambel and James DeArruda of ClearFreight, Inc.). The
facts that all nonessential terms were left open and/or later discussed and reflected in a
subsequent written agreement does not negate the contract due to indefiniteness.

### 3.      Elixir's breach of the agreement.

It is undisputed that Elixir breached the agreement. Its performance obligation was
simple: pay Global its commission upon payment by the State of Georgia. To this day, despite
full performance by Global, payment from the State of Georgia of over $6 million, and payment
to the third parties previously disclosed, Elixir has not paid anything to Global. This is a material
breach of the parties' agreement. *See generally, CCE Federal Credit Union v. Chesser*, 150 Ga.
App. 328, 258 S.E.2d 2 (1979) (describing the nature of a breach).

Summary judgment on the validity, enforceability, and breach of this agreement is
accordingly proper.

### C.     The Compensation Agreement signed by Mr. Hudler is valid and enforceable.

Although the parties already had a valid and enforceable agreement at the time Mr.
Hudler sent the signed Compensation Agreement, this agreement served to memorialize and

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

supply the remaining, non-essential terms governing the parties' agreement and act as the governing document, and became enforceable against Elixir. Indeed, the very crux of this case is Elixir's argument that it has no contractual obligations vis-à-vis the Compensation Agreement because this agreement was revoked before Global sent a counter-executed version back to Elixir. This argument has been, and remains to be, incorrect.

As more fully described above, at no point prior to his attempted revocation did Mr. Hudler condition the validity of this agreement upon Global's counter-signature. Kilgore Decl., ¶ 38; Elixir Depo. at 77:18-78:4 (acknowledging same). Indeed, Mr. Hudler never invited any manner of acceptance, nor was it necessary. *Id.* Given that the parties had already been entrenched in the Georgia Transaction, it was only reasonable for Global to simply continuing to perform as it already had in effectuating the successful sale of product to the State of Georgia. Per Mr. Kilgore, Global assented to this agreement as a reflection of the agreement the parties had already reached. Kilgore Decl., ¶ 37. Global thereafter continued to perform in assisting with the procurement of product and payment from the State of Georgia. *Id.* at ¶ 38. Global's performance was complete by May 11, 2020, when the final payment from the State of Georgia came to Elixir. ). As stated above, performing under a contract constitutes acceptance of an offer. *State v. U. S. Oil Co.,* 389 S.E.2d 498 (Ga. Ct. App. 1989) ; *Classic Restorations, Inc. v. Bean,* 272 S.E.2d 557 (Ga. Ct. App. 1980); *see also, Hansen v. Doan,* 740 S.E.2d 338 (Ga. Ct. App. 2013) (an offer may be accepted either by a promise to do the thing contemplated therein or by the actual doing of the thing); *Barnes,* 838 S.E.2d 916 (same). The offeror's power to revoke the offer to enter into a contract ceases, however, at the instant that an acceptance by the offeree becomes effective. *In re Hopson,* 216 B.R. 297. There can be no dispute that Global performed, and continued to perform, in reliance on Elixir's commitments, including those in the Compensation Agreement.

Only on May 11, 2020—the same day the State of Georgia sent the final payment balance to Elixir—did Elixir attempt to "revoke" the Compensation Agreement, claiming that it had no legal effect as it was never counter-executed by Global. Kilgore Decl., ¶ 48; Elixir Depo. at

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

77:18-78:4 (admitting that Elixir never communicated to Global prior to this point that the agreement was invalid or needed to be counter-executed to be effective). However, this purported "revocation" was invalid at this point. Global had already fully performed.

Moreover, this is not the type of agreement falling within the statute of frauds. It is unclear whether Elixir's position has been that the Compensation Agreement is somehow unenforceable due to the lack of Global's counter-signature because the agreement falls within Georgia's (or Oregon's) statute of frauds. However, to the extent Elixir does make such an argument, it is completely irrelevant. First, this is not an agreement covered within the statute. *See* O.C.G.A. 13-5-30 (2010) (for Georgia's statute of frauds), and ORS 41.580 (for Oregon's analog). Secondly, it is black letter contract law that the document must be signed by the party against whom enforcement is ought. This is not a case where Elixir is suing for Global's performance. It is the other way around. It does not matter, for the purposes of the statute of frauds, whether Global ever counter-signed the agreement when Elixir did so.

In sum, there is simply no legal basis for Elixir to argue that the Compensation Agreement is unenforceable against Elixir when (a) Elixir executed the document and (b) Global manifested its assent to that agreement by continuing to perform in reliance. Elixir's bad faith, attempted "revocation" of this agreement on the date it received final payment from the State of Georgia is unavailing. Summary judgment on the validity of the Compensation Agreement and its enforceability against Elixir is accordingly proper.

### 1.    Terms of the Compensation Agreement.

Having established that the Compensation Agreement is a valid and enforceable contract, the Court may now turn back to Oregon law to govern the ensuing analysis. *See* Compensation Agreement, Section 12 ("Governing Law"). The critical provision in the Compensation Agreement at issue in this litigation is Section 2, titled "Compensation and Costs." This provision spells out the formula and timing of payment to Global for its portion of profits on any given sale. For example, it states that "Costs" and "Adjustments" will be factored and paid before payment by Elixir to Global. Once these "Costs" and "Adjustments" have been factors

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

and settled, "Elixir shall within two (2) business days distribute the compensation to [Global]." Global's compensation shall "be equal to fifty percent (50%) of the gross sales proceeds received by Elixir from a buyer . . . less all Costs and Adjustments." *Id.*

Included in the definition of "Costs" and "Adjustments" are (1) adjustments in quantify; (2) commissions to third parties that have been approved by the parties; and (3) the "cost of customary purchase order financing or reasonable financial costs associated with fulfilling a purchase order." As detailed above, the parties agreed to an adjustment in the cost of product for the 3ply masks, providing the supplier with an extra nickel per mask before they would leave the supplier's warehouse. Kilgore Decl., ¶ 33. The third-parties previously disclosed were two Phil Gambel, and James DeArruda of ClearFreight, Inc. It is undisputed that these individuals have been since paid their commissions from the Georgia Transaction. *See* Elixir Bank Statements evidencing same, Composite Ex. "G" to the Stamm Decl. It is undisputed that the State of Georgia paid Elixir over $6 million due to Global's efforts. It is further undisputed that Elixir failed to pay Global any money from the Georgia Transaction.

Elixir may point to the "cost of customary purchase order financing or reasonable financial costs associated with fulfilling a purchase order" as the basis for it withholding any payment. As more fully described in the Kilgore Decl., Elixir claims to have incurred a **significant** "capital" cost, and that these "capital" sources ultimately how much money Global was going to receive. Kilgore Decl., ¶ 43. However, none of the specifics regarding these "capital" costs, nor the staggering percentage that they were allegedly due to receive on the Georgia Transaction, were ever disclosed to Global during the time it had accepted the agreement and performed thereunder. *Id.*; Shahid Depo. at 85:4-9 (admitting same); Elixir Depo. at 66:10-15 (claiming lack of recollection on whether this was ever disclosed to Global) It was only revealed **nearly two years later**, at Elixir's corporate representative deposition, that Elixir's "capital" sources were to receive **50%** of gross profits from the Georgia Transaction *before* Global and Elixir were to receive their share (effectively reducing Global's share of gross profits from a half to a quarter). As reflected on the accounting provided by Elixir in the course of

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

discovery (Ex. S to the Kilgore Decl.), Elixir maintains that these "capital" sources are owed over $1.6m from gross profit on the Georgia Transaction.

What's more, it was only recently revaled in an amended response to Global's interrogatories that Elixir's "capital" source was Mr. Hudler himself all along, along with his ex-father-in-law. Although the Compensation Agreement allows Elixir to deduct "reasonable" and "customary" finance charges from total profit, **50%** of gross profit is simply unreasonable, let alone never discussed with Global ahead of time).

Finally, it is undisputed that Elixir breached the Compensation Agreement in failing to remit payment to Global. Embedded in every contract is the covenant of good faith and fair dealing. *See Uptown Heights Associates v. Seafirst Corp.*, 320 Or. 638, 645 (1995). As more fully described in the Kilgore Decl., Elixir continually refused to remit payment to Global, first due to the lack of a counter-signature (which was baseless, as described above), and due to the (ficticious) demands of its mysterious "capital" sources for Global to accept a lower payment amount. As of May 11, 2020, and certainly beyond, Elixir had been fully paid by the State of Georgia, and all payments to third-parties and other sources had been complete. The bad faith obfuscation and delay regarding the alleged "capital" sources amount to a material breach of the Compensation Agreement. What's more, even when Elixir acknowledged the amount owed to Elixir in providing the accounting, it still refused to pay. Kilgore Decl., ¶ 71.

### D.    Elixir's contract damages are reasonably certain.

Global may elect its remedy on the agreement struck before April 28, 2020, or under the Compensation Agreement signed by Mr. Hudler. Under the earlier agreement struck before April 28, 2020, Global's commission is the result of the agreed-upon formula described above: 50% of gross profit after cost of goods sold and commissions to Phil Gamble and James DeArruda of ClearFreight, Inc.. The following numbers are undisputed:

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

| | | |
|---|---|---|
| **Total Revenue received by Elixir from State of Georgia:** | $6,200,000.00 | *See* Ex. S to the Kilgore Decl. ("accounting" of costs and revenue provided by Elixir). |
| **Payment to Phil Gamble:** | $75,000.00 | *Id.* (reflecting $75,000 payment to "PG"). |
| **Payment to James DeArruda of ClearFreight, Inc.** | Approx. $55,000.00 | *See* Composite Ex. "G" to Stamm Decl. (Elixir bank statements listing wire transfers to ClearFreight, Inc.). |
| **Cost of masks:** | $1,300,000.00 | *See* Ex. S to Kilgore Decl. ("accounting" of costs). |
| **Cost of hazmat suits:** | $1,497,570.00 | *See* Ex. "F" to Stamm Decl. (April 2020 bank statement evidencing payment to supplier of suits, Red Rock Sourcing, LLC. |

Calculating each of these expenses (cost of goods and commissions to third parties), the total expenses to Elixir for the Georgia Transaction would accordingly be $2,927,570. Gross profit, therefore, would be $3,272,430. Dividing that by two, and resulting in Global's 50% cut of gross profits, yields **$1,636,215.00** in damages.

 If Global were to proceed with its damages pursuant to the breach of the Compensation Agreement, and relying on the "accounting" document provided by Elixir as a true and accurate reflection of costs and expenses, **at a minimum**, Global would be entitled to receive

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

**$760,262.00**, due to Elixir's error in calculating the total cost of procuring the hazmat suits as described more fully above. However, Elixir's unreasonable and bad faith inclusion of over $1.6 million in "capital" costs and fees should be deducted from this amount, as this figure is unreasonable and was never disclosed to Global. Accounting for this additional figure, again as discussed above, Global's share of profits due pursuant to the Compensation Agreement should be **$1,583,558.50**.

Summary judgment on either damages figure is accordingly appropriate.

**E.    In the alternative to Count I, summary judgment on Counts IV and V are appropriate.**

In the alternative to its claims for an express contract, Global has brought twin claims for unjust enrichment and quantum meruit. It is both proper and commonplace for a party to plead counts in contract and in quantum meruit covering the same course of events. "Such alternative pleading may be beneficial to the pleader ... where [it] is unsure of whether it can *actually prove the existence of the contract at trial.*" *Kashmir Corp. v. Patterson*, 43 Or. App. 45, 48 (1979) (emphasis added). "Indeed, the use of a quantum meruit claim as an alternative to a breach of contract claim is so common that it is not only unremarkable but something that is expected." *Mount Hood Cmty. Coll. ex rel. K & H Drywall, Inc. v. Fed. Ins. Co.,* 199 Or. App. 146, 156 (2005). A plaintiff is entitled to plead alternatively on an express contract and in *quantum meruit* "without having to elect the theory upon which it would rely." *Id.* at 159.

Under Oregon law, the elements of a quasi-contract are: (1) a benefit is conferred; (2) the recipient is aware that a benefit has been received; and (3) "[i]t would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Robinowitz v. Pozzi*, 127 Or. App. 464, 467 (1994). Here, it is undisputed that Global conferred a benefit to Elixir by soliciting and generating a purchase order from the State of Georgia that eventually yielded over $6 million in revenue to Elixir. Both Elixir and Mr. Shahid repeatedly admitted that this deal would not have been done without Global's services, and were aware that Global performed such services. Both acknowledge that Global did not perform these services for free. Global did not.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

Kilgore Decl., ¶ 72. Over two years have passed since the date of full payment by the State of Georgia to Elixir. And yet, to date, Elixir has kept over $1.5 million owed to Global as compensation for its efforts. It would be a severe injustice to allow Elixir to retain all of the reward of Global's efforts. Summary judgment on Coutns IV and V, in the alternative to Count I, is accordingly proper.

**F.    Summary judgment on Count II, violation of the Alabama Sales Representative Statute—is appropriate.**

Global also moves for summary judgment on Count II of its Counterclaim: violation of the Alabama Sales Representative Statute. *See* Alabama Code, Title 8, section 24-1, *et seq.* This regime ensures that sales representatives utilized by principals in the sale of products are paid their commissions within a specified time. *See* Section 8-23-3 ("[a] principal who fails to pay a commission as required by Section 8-24-2 is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court costs."). Per Section 24-1(2) a "Principal" is defined as any person who does all of the following: (a) engages in the business of manufacturing, producing, importing, or distributing a product or products for sale to customers who purchase the product or products for resale; (b) utilizes sales representatives to solicit orders for the product or products; and (c) compensates the sales representatives, in whole or in part, by commission. *Id.* A "Sales Representative" is defined as "[a]ny person who engages in the business of soliciting, on behalf of a principal, orders for the purchase at wholesale of the product or products of the principal, but does not include a person who places orders or purchases for his or her own account for resale, or a person engaged in home solicitation sales."

Section 8-24-2 governs the timing of commissions owed to a Sales Representative:

(a)  The terms of the contract between the principal and sales representative shall determine when a commission is due.

(b)  If the time when the commission is due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

> or if there are no past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties shall control.
>
> (c)  All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within thirty days after the date of termination. Commissions that become due after the termination date shall be paid within thirty days after the date on which the commissions become due.

*Id.* Here, it is undisputed that Elixir is engaged in the business of importing or distributing products for the sale of products, and did so vis-à-vis the Georgia Transaction. Elixir utilized Global as a sales representative to solicit a purchase order from the State of Georgia. Elixir was to pay Global a commission for Global's efforts in soliciting the purchase order. It is undisputed that Global was a "Sales Representative" for the purpose of the Georgia Transaction in soliciting the purchase of products from the State of Georgia on behalf of Elixir. Per the parties' agreement—whether the agreement struck before April 28, 2020, or the Compensation Agreement—payment of that commission to Global was to occur within a specific time. It is undisputed that Global received full and final payment from the State of Georgia on May 11, 2022. It is equally undisputed that Elixir has failed to pay anything to Global.

In sum, the undisputed facts demonstrate that summary judgment as to Elixir's liability under the Alabama Sales Representative Statute is appropriate. Global submits that its damages are reasonably definite and certain under this statute, as outlined above.

## CONCLUSION

For these reasons, and for the reasons stated above, the Court should grant GIC's Motion for Partial Summary Judgment.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

Dated: June 17, 2022.

                                Respectfully submitted,

                                SCHWABE, WILLIAMSON & WYATT, P.C.

                                By: *s/ Jonathan Stamm*
                                      Anne M. Talcott, OSB #965325
                                      Email:  atalcott@schwabe.com
                                      Jonathan Stamm, OSB #185861
                                      Email:  jstamm@schwabe.com
                                      Telephone: (503) 222- 9981
                                      Facsimile: (503) 796-2900

                                      *Attorneys for Defendant*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900